**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

|                                        |     |                        |
| -------------------------------------- | --- | ---------------------- |
| EVELYN M. STEPHENS, as                 | :   |                        |
| Executrix Under the Last Will and      | :   |                        |
| Testament of J.C. Hyde,                | :   |                        |
|                                        | :   |                        |
| Plaintiff,                             | :   | CIVIL ACTION NO.       |
|                                        | :   | 1:05-CV-1366-RWS       |
| v.                                     | :   |                        |
|                                        | :   |                        |
| The Trust for Public Land, a           | :   |                        |
| California Non-Profit Corporation,     | :   |                        |
|                                        | :   |                        |
| Defendant.                             | :   |                        |

**ORDER**

Now before the Court are (i) Defendant's Motion for Summary Judgment [102]; (ii) Plaintiff's Motion for Summary Judgment [178]; and Defendant's Motion to Strike [240].  After considering the entire record, the Court enters the following Order.

**Background**

The facts of this case are set out in this Court's prior Order and need not be recounted here.  (See Order of Feb. 2, 2007 [229].)  It is sufficient for purposes of this Order to state that Plaintiff Evelyn Stephens, acting in her

capacity as Executrix of the Estate of J.C. Hyde Jr., initiated this action in the Superior Court of Fulton County, Georgia, seeking <u>inter alia</u> a declaration that a contract[1] between J.C. Hyde Jr. and Defendant which granted Defendant a 20-year preemptive right to purchase certain property along the Chattahoochee River was, for numerous reasons, invalid and unenforceable under Georgia law.[2]  Defendant properly removed the action to this Court, and counterclaimed for specific performance under the Agreement.

After discovery, both parties moved for summary judgment.  By Order entered February 2, 2007, the Court granted Defendant's Motion for Summary Judgment in part, and correspondingly denied Plaintiff's Motion for Summary Judgment in part, holding that the Sale Agreement and RFO is valid and enforceable under Georgia law.  (<u>See</u> <u>id.</u> at 16-44.)  Because the Court

---

[1] The contract is denominated as a "Purchase and Sale Agreement and Right of First Offer."  The Court will refer to the contract as a whole as the "Sale Agreement" or the "Agreement," and to the Right of First Offer contained therein as the "RFO."

[2] As the Court explained in its prior Order, the Agreement divided the Hyde property into three tracts: "Tract A," "Tract B," and the "Remaining Property." Defendant agreed to purchase Tracts A and B, and was granted a 20-year preemptive right, denominated as a "Right of First Offer," over the Remaining Property.  Since executing the Agreement, Defendant has purchased Tracts A and B, and conveyed that property to the United States of America for incorporation into the Chattahoochee River National Recreation Area.  Thus, the only issue that remains is Defendant's right to purchase the Remaining Property under the Agreement.

2

concluded that additional discovery was necessary to the just resolution of this dispute, however, the Court allowed for certain discovery to occur outside the discovery period,[3] reserved ruling on the remaining aspects of the parties' cross-motions for summary judgment, and directed the parties to file supplemental briefs upon the completion of the ordered discovery.  The parties have now conducted the additional discovery and filed their supplemental briefs in accordance with the Court's schedule.  Accordingly, the parties' cross-motions for summary judgment are ripe for decision, and the Court turns to finally resolve those motions.

## Discussion

## I.    Preliminary Matters

### A.    Defendant's Costs and Fees for Prior Motion to Compel

In its February 2, 2007 Order, the Court granted Defendant's Motion to Compel the production of certain documents which had been withheld based

---

[3] The Court granted Defendant's request to conduct the depositions of Richard S. Myrick Jr., Richard A. Newton Jr., and The Myrick Company, LLC outside of the discovery period, and required Plaintiff's expert, Russell Dabney, to produce certain documents which had been withheld based upon a claim of privilege. (See Order of Feb. 2, 2007 at 9-15.)

3

upon a claim of privilege, and concluded that Defendant is entitled to recover its costs and reasonable attorneys fees associated with bringing that motion.  (See Order of Feb. 2, 2007 at 12-15.)  On February 13, 2007, Defendant filed a statement of its costs and fees in accordance with the Court's Order, and Plaintiff has filed no response to that statement.  The Court has reviewed Defendant's statement of its costs and fees and finds that the hourly rates of counsel are reasonable for attorneys of their skill and experience in the Metropolitan Atlanta area, and that the total number of hours billed is likewise reasonable.  Accordingly, the Court finds that Defendant is entitled to recover $6,975.00 as its reasonable costs and attorney's fees incurred as a result of bringing its Motion to Compel under Federal Rule of Civil Procedure 37.

### B.    Motion to Strike

Defendant has moved to strike the affidavits of Evelyn Stephens and Richard Newton Jr. which were attached to Plaintiff's Supplemental Brief. Defendant argues that the filing of these affidavits contravenes the Court's express admonition that the parties should not use the supplemental briefing process to present arguments and evidence which could have been previously presented to the Court, and that these affidavits are mere "shams" which are

4

insufficient to avoid summary judgment.  (See, e.g., Def.'s Motion to Strike [240] at 3, 5-6.)

A motion to strike is "a drastic remedy to be resorted to only when required for the purposes of justice . . . [and] should be granted only when the pleading to be stricken has no possible relation to the controversy." Augustus v. Bd. of Public Instruction of Escambia County, 306 F.2d 862, 868 (5th Cir. 1962) (citation omitted).  Moreover, motions to strike are rarely granted absent a showing of prejudice.  Jones v. Wal-Mart Stores, Inc., No. 90-14113-CIV, 1991 WL 236503 (S.D. Fla. Apr. 25, 1991).  Because the affidavits do relate to the present controversy, and because under the Court's construction of the Sale Agreement, the Court perceives no prejudice that would befall Defendant as a result of leaving these affidavits in the record, Defendant's Motion to Strike [240] is **DENIED.**

## II.     The Cross-Motions for Summary Judgment

In its February 2, 2007 Order, the Court held that the Sale Agreement and RFO is valid and enforceable under Georgia law.  The Court expressly reserved ruling on two issues: (1) whether Defendant is entitled to specific performance

under the Sale Agreement and RFO, and (2) whether either party is entitled to recover its attorney's fees under Paragraph 25 of the Sale Agreement.  After considering the evidence in the record and the arguments of the parties, the Court answers both questions in the negative.

> ### A.   Summary Judgment Standard

Federal Rule of Civil Procedure 56 provides that summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  "The moving party bears 'the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.' " Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1259 (11th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (internal quotations omitted)).  Where the moving party makes such a showing, the burden then shifts to the non-movant, who must go beyond

6

the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  The applicable substantive law identifies which facts are material.  Id. at 248.  A fact is not material if a dispute over that fact will not affect the outcome of the suit under the governing law.  Id.  An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the non-moving party.  Id. at 249-50.

In determining a motion for summary judgment, the court must view all evidence and draw all reasonable inferences in the light most favorable to the non-moving party.  Patton v. Triad Guar. Ins. Corp., 277 F.3d 1294, 1296 (11th Cir. 2002).  But, the court is bound only to draw those inferences which are reasonable.  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."  Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986)).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  Anderson, 477 U.S. at 249-50 (internal citations omitted); see also Matsushita, 475 U.S. at 586

7

(once the moving party has met its burden under Rule 56(c), the nonmoving party "must do more than simply show there is some metaphysical doubt as to the material facts.").

## B.    Specific Performance

As described above, the Court in its February 2, 2007 Order held that the Sale Agreement and RFO are valid and enforceable under Georgia law.  The Court therefore turns to the first question upon which it reserved ruling—namely, whether Defendant is entitled to judgment as a matter of law on its counterclaim for specific performance under the Agreement.  At various points in this litigation, and with varying degrees of clarity, Defendant has asserted four arguments in favor of its claim for specific performance: (1) Plaintiff breached the RFO by refusing to send Seller's Notice upon the formation of her desire to sell the Remaining Property; (2) Plaintiff breached the RFO by soliciting offers from, and negotiating with, prospective purchasers; (3) Plaintiff triggered Defendant's rights under the RFO by substantially complying with her obligation to provide Seller's Notice, and thus, breached the RFO by refusing to participate in the appraisal process; and (4) specific

performance is warranted under the doctrine of anticipatory repudiation.  The

Court addresses each of these arguments in turn.

        1.        <u>Plaintiff's obligation to send Seller's Notice under the RFO</u>

Notwithstanding the voluminous briefing on this issue, this case presents

a very simple question: Whether, under the RFO, Plaintiff's formation of a

subjective desire to sell the Remaining Property obligates her to send Seller's

Notice, thereby causing Defendant's preemptive right to purchase the

Remaining Property to ripen?  The Court concludes that it does not.

The Court begins with the language of the contract itself.  The Sale

Agreement provides in pertinent part:

> For a period of twenty (20) years from the date of this
> Agreement, Seller hereby grants to Buyer the Right of
> First Offer on the Remaining Property.  At any time
> during such twenty (20)-year period that Seller desires
> to sell the Remaining Property, or any portion thereof,
> before offering the Remaining Property or any portion
> thereof, or listing the same for sale with one or more
> brokers, Seller shall give Buyer a Notice of Seller's
> desire to so sell ("Seller's Notice").  Seller's Notice
> shall be based upon a then-current (dated within three
> (3) months from the date of Seller's Notice) MAI
> appraisal in Seller's possession, which Seller shall
> provide to Buyer with Seller's Notice.

(Sale Agreement ¶ 20(a).)  Under the Agreement, once Seller provides the requisite Seller's Notice under Paragraph 20(a), a specified appraisal process intended to generate a binding sale price which accurately reflects the fair market value of the Remaining Property is initiated. (See id. ¶ 20(b)-(c).)

The parties in this case do not dispute that the RFO grants Defendant a 20-year preemptive right to purchase the Remaining Property.  Rather, the dispute in this case hinges upon the language of the RFO, and specifically, what triggers the parties' respective rights under that Agreement.  In this regard, Defendant contends that it is entitled to specific performance because Plaintiff has breached the Agreement by forming the subjective desire to sell the Remaining Property, while refusing to provide the Seller's Notice required under the RFO.  It is Defendant's position that under Paragraph 20(a), Plaintiff is required to deliver Seller's Notice as soon as she forms the subjective desire to sell the Remaining Property, and the failure to do so constitutes breach of the Sale Agreement sufficient to entitle Defendant to specific performance.  (See Reply in Supp. of Def.'s Mot. for Summ. J. at 19 ("[I]t is Seller's decision and intent to sell [the Remaining] Property which mandates that Seller give its 'Seller's Notice' under the RFO and requires the start of the appraisal/pricing

process and triggers Buyer's option to buy the [Remaining] Property").)  In this

regard, Defendant argues that "[t]here is nothing discretionary about when the

Seller's Notice must be sent."  (Def.'s Resp. to Pl.'s Mot. for Summ. J. at 35.)

Rather, "once Plaintiff forms a desire to sell the [Remaining] Property . . . she

has <u>no choice</u> but to send [Defendant] a notice stating that fact." (<u>Id.</u> (emphasis

in original).)  Defendant continues that because the evidence in this case

establishes both that Plaintiff, in fact, formed a subjective desire to sell the

Remaining Property, and that Plaintiff failed to comply with the appraisal

process set out in the RFO, it is entitled to specific performance under the

Agreement.  (<u>See, e.g.</u>, Def.'s Supp. Br. [234-1] at 3-4.)  The Court disagrees.

### a.      Construction of the RFO

Under Georgia law, "[t]he construction of a contract is a question of law

for the court," O.C.G.A. §13-2-1, and "the construction rules decided by

Georgia courts are applicable in federal court when interpreting a contract

controlled by Georgia law."  <u>In re Club Assoc.</u>, 951 F.2d 1223 (11th Cir. 1992).

Georgia courts apply a three step process when construing contracts.

<u>CareAmerica, Inc. v. S. Care Corp.</u>, 494 S.E.2d 720, 722 (Ga. Ct. App. 1997).

First, the court must determine whether the language of the contract is clear and

unambiguous.  Id.  Where the language of a contract is clear, unambiguous, and capable of only one reasonable interpretation, no construction is necessary, and the court simply enforces the contract according to its clear terms.  Id.; Club Assocs., 951 F.2d at 1230.  If, however, a word or phrase in the contract is ambiguous, then the court must proceed to the second step and apply the rules of contract construction to resolve the ambiguity.  CareAmerica, 494 S.E.2d at 722.  Finally, "if the ambiguity remains after applying the rules of construction, the issue of what the ambiguous language means and what the parties intended must be resolved by a jury."  Id.  Guided by this framework, the Court proceeds to determine first, whether the Sale Agreement is ambiguous, and second, whether the applicable rules of construction resolve any ambiguity as a matter of law.

b.      The Sale Agreement is not ambiguous

Applying the three step process of contract construction under Georgia law, the Court must first determine whether the RFO is ambiguous.  " '[A] word or phrase is ambiguous only when it is of uncertain meaning, and may be fairly understood in more ways than one.' "  Club Assocs., 951 F.2d at 1230 (quoting Dorsey v. Clements, 44 S.E.2d 783, 787 (Ga. 1947)); see also, e.g., Holcim, Inc.

12

v. AMDG, Inc., 596 S.E.2d 197, 200 (Ga. Ct. App. 2004) ("Ambiguity is

defined as duplicity, indistinctness, an uncertainty of meaning or expression

used in a written instrument, and [it] also signifies. . . doubtful or uncertain

nature; wanting clearness or definiteness; difficult to comprehend or

distinguish; of doubtful purport; [or] open to various interpretations." (internal

citations omitted)).  In contrast, "[l]anguage is unambiguous if it is capable of

only one reasonable interpretation." Toy Wright Ventures, LLC v. Radlo Foods,

LLC, 635 S.E.2d 862, 862-63 (Ga. Ct. App. 2006).  " 'The existence or

non-existence of ambiguity is always a question of law for the court.' " Club

Assocs., 951 F.2d at 1230  (quoting  Stern's Gallery of Gifts, Inc. v. Corp. Prop.

Investors, Inc., 337 S.E.2d 29, 35 (Ga. Ct. App. 1985)).

Having reviewed the Sale Agreement and RFO as a whole, the Court

concludes that the terms of the Agreement are unambiguous.  As set forth

above, Paragraph 20(a) of RFO provides: "At any time during such twenty (20)-

year period that Seller desires to sell the Remaining Property . . ., before

offering the Remaining Property or any portion thereof, or listing the same for

sale with one or more brokers, Seller shall give Buyer a Notice of Seller's

desire to so sell ("Seller's Notice")."  (Sale Agreement ¶ 20(a).  Contrary to

Defendant's position, when properly construed this provision does not require that Seller's Notice be given upon the formation of a desire to sell the Remaining Property, or even when Plaintiff affirmatively decides to sell the property.  Instead, Paragraph 20(a) requires only that Plaintiff give Seller's Notice "before offering the Remaining Property or any portion thereof, or listing the same for sale with one or more brokers."  (Sale Agreement ¶ 20(a).) Beyond that, the plain language of the RFO places no restrictions upon the time when Seller's Notice must be given, and certainly does not, as Defendant contends, obligate Plaintiff to give Seller's Notice immediately upon her formation of some subjective desire to sell the Remaining Property.[4] Accordingly, provided that Plaintiff has neither offered the property for sale nor listed it with a broker, her failure to send Seller's Notice does not constitute a breach of the Sale Agreement irrespective of whether she has formed some subjective desire to sell.

---

[4] Thus, provided that Plaintiff does not sell the Remaining Property, offer it for sale, or list it with a broker before the relevant period expires, Defendant is absolutely correct that the RFO allows "Plaintiff, despite her desire to sell the property, to simply withhold sending the required notice until the end of the option period, and then sell the land to a developer the very next day."  (Def.'s Resp. to Pl.'s Mot. for Summ. J. at 35-36.)

14

       c.      <u>Applying the Georgia rules of contract construction,</u>
               <u>any ambiguity must be resolved against Defendant</u>

Moreover, even assuming that the language of the RFO is ambiguous, the Court would similarly conclude that the RFO does not require Seller's Notice to be sent upon Plaintiff's formation of a desire to sell the Remaining Property. As explained above, where a contract provision is ambiguous, the Court must attempt to resolve any ambiguity in the contract by applying the rules of construction.  Under Georgia law,

> [t]he cardinal rule of construction is to ascertain the intention of the parties.  If that intention is clear and it contravenes no rule of law and sufficient words are used to arrive at the intention, it shall be enforced irrespective of all technical or arbitrary rules of construction.

O.C.G.A. § 13-2-3.  " 'The courts are to afford greater regard to the clear intent of the parties than to any particular words which they may have used in expressing their intent.' "  <u>Club Assocs.</u>, 951 F.2d at 1229-30 (quoting <u>Georgia R.R. Bank & Trust Co. v. Federal Deposit Ins. Corp.</u>, 758 F.2d 1548, 1551 (11th Cir. 1985)).  That said, "[t]he construction which will uphold a contract in whole and in every part is to be preferred, and the whole contract should be

looked to in arriving at the construction of any part." O.C.G.A. § 13-2-2(4).

"Thus, a contract must be interpreted to give the greatest effect possible to all

provisions rather than to leave any part of the contract unreasonable or having

no effect." VATACS Group, Inc. v. HomeSide Lending, Inc., 623 S.E.2d 534,

537 (Ga. Ct. App. 2005).

　　　　In this case, the Court cannot agree with Defendant that the RFO requires

Seller's Notice to be sent upon Plaintiff's formation of a desire to sell the

Remaining Property for at least two reasons.  First, the Court finds that

interpretation to be simply contrary to the obvious intent of the parties at the

time they entered into the Sale Agreement.  From the course of the parties

dealings, and the other provisions of the Sale Agreement, it is clear that the

parties intended only to provide Defendant with an opportunity to purchase the

Remaining Property at its appraised value before the property is listed or sold

on the open market.  The parties clearly intended to give Mr. Hyde, whom

Plaintiff represents, control over whether the Remaining Property was to be

sold.  They did not intend to create a contractual mechanism by which

Defendant could convert a mere desire to sell the property into a means by

which Defendant could compel its sale before Plaintiff finally determined that

the sale should proceed, and any interpretation that would give Defendant that authority is clearly contrary to the intent of the parties.

Second, that construction would render a portion of the contract meaningless. The RFO contains two separate mechanisms under which the parties may agree as to the sale price of the Remaining Property. The first of these is set forth in Sale Agreement ¶ 20(a)-(c). The second is set forth in Paragraph 20(e), which provides:

> Nothing contained in this Agreement shall be construed so as to prohibit Seller and Buyer from arriving at a mutually-agreeable purchase price for the Remaining Property outside of the valuation process set forth in this Paragraph 20; provided however that absent such separate agreement between Buyer and Seller, Seller may not otherwise offer for sale or sell the Remaining Property to any person or entity other than Buyer without first extending to Buyer the Right of First Offer and complying fully with the requirements of this Paragraph 20.

(Sale Agreement ¶ 20(e).)

The inclusion of Paragraph 20(e) completely forecloses Defendant's reading of the RFO. Paragraph 20(e) allows the parties to freely negotiate and conduct the sale of the Remaining Property between themselves wholly outside

17

of the Paragraph 20(a)-(c) valuation process.  As Plaintiff would presumably be required to form a subjective desire to sell the Remaining Property before effecting that sale under an agreement reached pursuant to Paragraph 20(e), Paragraph 20(a) cannot be interpreted to render the failure to send Seller's Notice upon the formation of that desire a breach of the Agreement.

Finally, even if the Court had found ambiguity in the express terms of the RFO, it would construe that language against Defendant's interpretation.  " 'As a general rule the provisions of a contract will be construed against the draftsman. . . .' " Club Assoc., 951 F.2d at 1231 n.10 (quoting Stern's Gallery, 337 S.E.2d at 35); see also id. (collecting Georgia cases).  Although it is true that all parties to the Sale Agreement were represented by counsel, it is undisputed that Defendant is a highly sophisticated entity involved in significant real estate purchases on a day-to-day basis, and that counsel for Defendant drafted the Sale Agreement and RFO.  Quite simply, if Defendant intended the provisions of the contract to render Plaintiff's mere thoughts and subjective desires the subject of an action for breach of contract, it could have drafted the RFO to clearly provide for that.  But, it did not.  Instead, it elected to include the provision that Seller's Notice must be given "before offering the

Remaining Property or any portion thereof, or listing the same for sale with one or more brokers." Construing the RFO against Defendant as its drafter, it is that provision, and not Plaintiff's subjective desire to sell the property, which controls her obligation to provide Seller's Notice.

In sum, the RFO requires that Defendant be given Seller's Notice and provided an opportunity to purchase the Remaining Property through the Paragraph 20(a)-(c) valuation process before that property is listed with a broker, or otherwise sold or offered for sale to a third party. The RFO does not require Plaintiff to provide Seller's Notice upon the mere formation of a subjective desire to sell the property, and her subjective state of mind has no bearing on whether she is in compliance with its terms. As the record is devoid of any evidence tending to show that Plaintiff has sold the Remaining Property, actually offered it for sale, or formally listed it with one or more agents, Plaintiff has not breached Paragraph 20(a) merely because she may desire to sell the Remaining Property, and yet has refused to give Seller's Notice.[5]

---

[5] The Court has reviewed the deposition testimony of Dan Fields which Defendant cited in its Statement of Additional Facts [193-1] ¶ 14. While that evidence certainly establishes that multiple offers were made to purchase the Remaining Property, it in no way establishes that Plaintiff offered the property for sale. As such, that evidence is insufficient to create a genuine issue of fact as to whether Plaintiff breached Paragraph

AO 72A
(Rev.8/82)

2.      <u>Solicitation of offers and negotiation with prospective purchasers does not breach the RFO</u>

In a second line of argument, Defendant contends that Plaintiff's solicitation of offers from, and negotiations with, prospective third-party purchasers violates the express terms of the RFO. (<u>See, e.g.</u>, Def.'s Supp. Br. at 4.)  The Court finds this line of argument to be wholly unpersuasive.

Assuming without deciding that Plaintiff did, in fact, solicit offers from prospective purchasers, and negotiate with those purchasers regarding an acceptable sale price, she has not breached the terms of the RFO.  As discussed above, the RFO prohibits Plaintiff from "selling" the property, "offering" it for sale, or "listing" it with a broker, without first giving Defendant the opportunity to purchase it under the RFO.  Simply stated, solicitation and receipt of an offer to purchase is not a legally enforceable offer to sell.  <u>See</u> O.C.G.A. § 13-2-2(2) ("Words generally bear their usual and common signification; but technical

---

20(a) by offering the property for sale.  Likewise, the deposition testimony of Richard Newton Jr., Mr. Myrick, and the Myrick Company clearly establishes that Plaintiff entertained numerous offers from prospective purchasers.  Their deposition testimony does not, however, establish that Plaintiff offered the property for sale, or listed it with a broker.  Accordingly, their testimony does not preclude a grant of summary judgment in Plaintiff's favor.

words, words of art, or words used in a particular trade or business will be construed, generally, to be used in reference to this peculiar meaning."). Similarly, "an invitation to enter into negotiation is not an offer which can be converted into a contract by acceptance." Newton v. Coe-Mortimer, Co., 93 S.E. 235, 235 (Ga. Ct. App. 1917).  Finally, there is no evidence that Plaintiff ever entered into any agreement with a broker, or otherwise listed the property for sale.  Accordingly, these actions, to the extent they occurred, do not run afoul of Plaintiff's obligations under the RFO.

### 3.   Plaintiff has not triggered Paragraph 20(a) of the RFO through substantial compliance

The RFO is clear that the parties' respective rights and obligations are triggered by the giving of Seller's Notice.  (See Sale Agreement, ¶ 20(b) ("Buyer shall, within sixty (60) days after receipt of Seller's Notice, give a Notice to Seller . . . either (i) accepting Seller's appraisal of the fair market value of the Remaining Property . . . or (ii) rejecting Seller's appraisal. . . .").)  Defendant appears to concede that formal Seller's Notice was not given in accordance with the terms of the RFO.  Nevertheless, Defendant appears to argue that Plaintiff desired to sell the property, and substantially complied with

21

the notice provisions of the RFO, so as to trigger the valuation process. (See Br. in Resp. to Pl.'s Mot. for Summ. J. at 39, 40.)

Unfortunately, the parties devote little, if any, of their various briefs, responses, and replies to this issue.  That said, the evidence in the record shows that on September 29, 2004, after a series of contacts between the parties and discussions regarding the potential sale of the Remaining Property to Defendant, Christopher Deming, a Trust for Public Land project manager, sent a letter to Plaintiff's counsel, Richard Newton.  In that letter, which discusses a range of issues related to the sale of the Remaining Property, Mr. Deming states:

> When I called you last week to check on progress, you advised that the appraisal ordered by you on behalf of your client had just been completed.  Please note that per subsections 20(a) and (b) of the Right of First Offer, the Estate is to provide [Defendant] with a copy of its current appraisal when it sends the "Seller's Notice," which triggers [Defendant's] obligation to respond to the offer by the Estate.  The sooner you send us a copy of that appraisal and your development plans and other supporting documentation, the faster we will be able to respond back in accordance with the procedure spelled out in the Right of First Offer.

AO 72A
(Rev.8/82)

(Letter from Christopher Deming to Richard Newton (Sept. 29, 2004), Second

Deming Aff., Ex. 3 [194-9] at 2.)  Thereafter, on October 11, 2004, Mr. Newton

sent a letter to Defendant's Regional Counsel, attached to which was a copy of

an MAI appraisal with an effective date of March 3, 2004.  That letter states in

pertinent part:

> Please be advised that in furnishing to the Trust for
> Public Land an appraisal prepared by Richard O.
> Martain, MAI, . . . the Estate does not waive any right
> to contest the validity of the purported Right of First
> Offer dated April 14, 1992.

(Letter from Richard Newton to Karen Fuerst (October 11, 2004), Second

Deming Aff., Ex. 4 [194-10] at 1.)  After further correspondence between the

parties, Defendant informed Plaintiff that it was exercising its rights under

Paragraph 20(b) to reject Plaintiff's appraisal of the fair market value of the

Remaining Property and to commission a second MAI appraisal.  Implicit in

this invocation, of course, is that Mr. Newton's October 11, 2004 letter

constituted Seller's Notice, for as discussed above, it is Seller's Notice which

triggers Defendant's rights under Paragraph 20(b).  (See Letter from Karen

Fuerst to Evelyn Stephens (Nov. 9, 2004).)  Thus, the question this Court must

23

resolve is whether Mr. Newton's October 11, 2004 letter substantially complied

with Plaintiff's obligation to send Seller's Notice under the Agreement so as to

trigger the valuation process.  The Court concludes as a matter of law that it

does not.[6]

The Sale Agreement provides that all notices required under the contract

must be in writing, and either delivered personally or sent by courier service,

mail, or fax to no less than five specified individuals.[7]  (Sale Agreement ¶ 13.)

---

[6] As an initial matter, the law of the State of Georgia is somewhat unclear as to whether substantial compliance is sufficient, or whether strict compliance with the notice provisions is required.  Generally, Georgia courts require only substantial compliance with contractual terms, see Dennard v. Freeport Minerals Co., 297 S.E.2d 222, 224 (Ga. 1982) ("Our general rule with respect to compliance with contract terms is not strict compliance, but substantial compliance."); O.C.G.A. § 13-4-20 ("Performance, to be effectual, . . . must be substantially in compliance with the spirit and the letter of the contract. . . ."), including notice provisions, see, e.g., Hemmerich v. S.E. Prop. Group, L.P., 498 S.E.2d 87, 89-90 (Ga. Ct. App. 1998) (finding lessee did not effectively renew lease where she failed to substantially comply with notice provisions in lease).  In the context of option contracts, however, the Georgia courts have adopted a different rule and require strict compliance with the option terms.  See, e.g., Atkinson v. Cook, 518 S.E.2d 413, 414-15 (Ga. 1999).  These courts reason that because an option to purchase is in essence an offer to sell which remains open for a fixed period of time, any attempted exercise of that option "must be unequivocal and in accordance with the terms of the option[, o]therwise, . . . no valid contract has been formed."  Id.  Because acceptance varied from the terms of the offer, there is no contract.  That said, the Court need not determine whether in this case substantial or strict compliance with the notice provision is required because it concludes that the October 11, 2004 letter does not meet the lower, substantial compliance standard.

[7] The parties have pointed to nothing in the record to indicate that the notice provisions of the Agreement had been amended at the time that Plaintiff's counsel sent

Yet, it appears that the October 11, 2004 letter was sent only to Defendant's in-house counsel, Karen Fuerst.  The letter makes no mention of the valuation process under Paragraph 20(a) of the RFO, and there is nothing on its face which would indicate that it was intended to be deemed Seller's Notice under the Agreement.  Moreover, the RFO provides that Seller's Notice "shall be based upon a then-current (dated within three (3) months from the date of Seller's Notice) MAI appraisal in Seller's possession, which Seller shall provide to Buyer with Seller's Notice."  (Sale Agreement ¶ 20(a).)  Presumably this requirement was intended to protect both parties and to insure that the property neither appreciated or depreciated significantly between its appraisal and its sale.  Yet, the appraisal which Plaintiff provided, while completed just prior to its transmission to Defendant, had an effective date of March 3, 2004—the date of Mr. Hyde's death.  Thus, the appraisal did not comply with Paragraph 20(a), and in light of its effective date, was not guaranteed to accurately reflect the value of the property close to the time of its sale.  In view of these patent defects, the Court cannot say that the October 11, 2004 letter substantially complied with Plaintiff's obligation to send Seller's Notice under Paragraph 20(a) of the RFO.

─────────────────────

 his letter of October 11, 2004.

As such, the letter did not operate to trigger the valuation process under the Agreement, and Defendant is not entitled to specific performance on the ground that Plaintiff triggered, yet failed to complete, the valuation process.[8]

4.    Repudiation

Defendant argues that Plaintiff has repudiated the Sale Agreement and RFO, and as such, Defendant is entitled to specific performance.  " '[T]he "anticipatory repudiation" of a contract occurs when one party thereto repudiates his contractual obligation to perform prior to the time such performance is required under the terms of the contract.' "  Coffee Butler Service, Inc. v. Sacha, 366 S.E.2d 672, 673 (Ga. 1988) (quoting J.M. Clayton Co. v. Martin, 339 S.E.2d 280 (Ga. Ct. App. 1985)).  Where there is wrongful and unqualified repudiation of the entire contract by one party through an absolute refusal to perform, the other party is discharged from his duties and may enforce his remedial rights. See id.; Nikas v. Hindley, 106 S.E.2d 335, 339 (Ga. Ct. App. 1958) (explaining

---

[8] In considering whether the October 11, 2004 letter was sufficient to trigger the RFO valuation process, the Court wonders what would happen if the situation were reversed.  That is, suppose the same communication occurred, but Defendant did not respond within sixty days as provided for in Paragraph 20(b).  Could Plaintiff avoid her obligations under the RFO by arguing that the letter constituted Seller's Notice, and because Defendant failed to respond, its rights under the Agreement had expired?  The Court doubts that such an argument could carry the day.

26

that non-repudiating party may rescind contract and recover under quasi-contract principles, elect to treat the repudiation as a breach, or wait until the stated time for performance).  Whether any action of one party is sufficient to constitute a repudiation of the contract and amount to an anticipatory breach is a question of fact for the jury.  Jones v. Solomon, 428 S.E.2d 637, 638-39 (Ga. Ct. App. 1993).

Defendant, in its own Motion for Summary Judgment, is far from clear as to what actions on the part of Plaintiff operated to repudiate the Sale Agreement. However, from its Response to Plaintiff's Motion for Summary Judgment and the citations to Defendant's Statement of Additional Facts, it appears that Defendant relies upon three things to establish repudiation: (1) Plaintiff's refusal to give Seller's Notice despite having formed a subjective desire to sell the Remaining Property, (2) Plaintiff's alleged solicitation of offers to purchase the Remaining Property, and (3) statements contained in letters from Plaintiff's counsel.  The Court finds each of these bases for repudiation unconvincing.

First, the Court has previously determined that Plaintiff's formation of a desire to sell the Remaining Property does not operate to trigger her obligation to give Seller's Notice under Paragraph 20(a).  As such, Defendant's first ground is

27

without merit.  Second, the Court has similarly determined that there is no

evidence in the record to support Defendant's contention that Plaintiff has

offered the property for sale or listed it with a broker.  Accordingly, Defendant's

second ground is also without merit.  Third, the statements of Plaintiff's counsel

are insufficient to constitute repudiation of the agreement as a matter of law.  It

is certainly true that Plaintiff's counsel has communicated his ultimately

erroneous belief that the Sale Agreement was void and unenforceable as against

the Estate on more than one occasion.  But, these statements appear to be little

more than posturing between the parties, and are insufficient to constitute a

repudiation of the Agreement.  Moreover, even while professing his belief that

the Agreement was legally unenforceable, Plaintiff's actions have been

consistent with the terms of the Agreement.  Under the RFO, Plaintiff has both

present and future obligations: She has a present obligation to refrain from

listing the property with a broker or otherwise offering it for sale without first

giving Defendant an opportunity to purchase it under the terms of the RFO.  She

has a future obligation to give Defendant an opportunity to purchase the property

28

under the RFO in the event that she, in her sole discretion, decides to sell.[9]  Yet,

Plaintiff has taken no action which would be inconsistent with her present

obligations under the Sale Agreement, or which would render her future

performance impossible.  The record is clear that Plaintiff has neither offered the

property for sale nor listed it with a broker so as to violate her present

obligations under the RFO.  Similarly, Plaintiff has done or said nothing which

would indicate that she plans to sell the property outside of the provisions of the

RFO, and without first giving Defendant an opportunity to purchase the property

pursuant to its terms.  <u>Compare</u> <u>Roswell Props., Inc. v. Salle</u>, 430 S.E.2d 404,

406 (Ga. Ct. App. 1993) (finding act of deeming contract "null and void or

---

[9] It is critical to understand what rights Defendant has under the Agreement.  The preemptive right granted under the RFO is akin to a right of first refusal, except that the sale price is fixed by an appraisal process rather than an acceptable offer from a third party.  Unlike an option to purchase, which grants the holder of the option the power to compel the sale of property by an unwilling owner, the holder of a preemptive right has only the right to receive an offer to buy the property.  Thus, the owner's willingness to sell the property on specified terms is a prerequisite for a preemptive right to "ripen" into an option to purchase that property.  Where the owner of the property is unwilling to sell, the holder of the preemptive right has no power to compel the seller to do so.  <u>See</u> <u>Hasty v. Health Service Centers, Inc.</u>, 373 S.E.2d 356, 357 (Ga. 1988) ("A preemptive right merely sets a requirement that when the owner decides to sell the person holding the preemptive right must be offered the opportunity to buy."); <u>see generally</u> 3 Corbin on Contracts § 11.3.  Thus, a statement by the seller that it deems the preemptive right unenforceable, in the absence of evidence of the owner's willingness to sell the property upon specific terms (for example by offering the property to a third party), will not entitle the holder of a preemptive right to specific performance.

cancelled" and selling property to third party constituted repudiation of agreement to sell property to plaintiff), abrogated on other grounds as stated in, Golden Peanut Co. v. Bass, 547 S.E.2d 637, 645-46 (Ga. Ct. App. 2001). Finally, the fact that Plaintiff elected to seek a declaration of the parties' respective rights under the RFO before taking any of these prohibited actions is strong evidence that Plaintiff did not repudiate the agreement.  See Brownsboro Road Restaurant, Inc. v. Jerrico, Inc., 674 S.W.2d 40, 42 (Ky. Ct. App. 1984) (act of seeking declaratory judgment as to parties' rights under contract "conclusively mitigates" against any inference that party intended to repudiated contract).  As such, Plaintiff did not repudiate the agreement as a matter of law so as to entitle Defendant to specific performance.

### C.    Other Claims

In Counts VI and VII of Plaintiff's Complaint, she alleges that Defendant breached the RFO by tendering an MAI appraisal which does not comply with the terms of the Agreement, and that Defendant's actions constitute slander to title under Geogia law.  With respect to Plaintiff's claim for breach, aside from finding no evidence in the record to support that allegation, the Court's conclusion that Paragraph 20(a) was not triggered obviates any claim that

30

Defendant's appraisal tendered pursuant to Paragraph 20(b) constituted a breach of the Agreement.  Similarly, because the Court has concluded that the Sale Agreement is valid and enforceable, any claim for slander to title fails as a matter of law.  As such, Defendant is entitled to judgment as a matter of law as to Counts VI and VII of Plaintiff's Complaint.

### D.     Conclusion

To recapitulate, for the reasons stated in the Court's February 2, 2007 Order, the Sale Agreement is valid and enforceable under Georgia law. Therefore, Defendant is entitled to judgment as matter of law on Plaintiff's claim seeking a declaration that the Sale Agreement is void and unenforceable. Accordingly, Plaintiff must comply with its terms before offering the Remaining Property or any portion thereof for sale, or listing the same for sale with a broker.  Moreover, because the Sale Agreement is valid and enforceable, Plaintiff's other state law claims fail as a matter of law.

Plaintiff is entitled to judgment as a matter of law on Defendant's counterclaim for specific performance.  Plaintiff's obligation to provide Seller's Notice is not triggered by her formation of a subjective desire to sell the

31

Remaining Property.  Thus, whether Plaintiff actually desired to sell the property is irrelevant for purposes of the RFO.  Furthermore, Plaintiff has neither triggered the Paragraph 20(a)-(c) valuation process by substantially complying with her obligation to send Seller's Notice, nor repudiated the Sale Agreement so as to entitle Defendant to specific performance.

### E.   Attorney's Fees

Both parties seek an award of their reasonable attorney's fees under the Sale Agreement, which provides:

> In the event of any litigation, including appellate proceedings, arising out of this Agreement, the prevailing Party shall be entitled to recover reasonable attorney's fees and costs from the non-prevailing party.

(Sale Agreement ¶ 25.)

In view of the Court's resolution of this dispute, neither party has substantially prevailed so as to be entitled to their reasonable attorney's fees. Defendant has prevailed on Plaintiff's declaratory judgment claim that the Agreement is void and unenforceable; Plaintiff has prevailed on Defendant's counterclaim for specific performance.  As such, the claims for attorney's fees

32

by both parties are **DENIED**, and each shall bear their own costs and attorney's fees for this litigation.

### Conclusion

For the reasons stated herein, Defendant's Motion to Strike [240] is **DENIED**. Defendant's Motion for Summary Judgment [102] is **GRANTED IN PART and DENIED IN PART**. Defendant's Motion for Summary Judgment on its counterclaim for specific performance is **DENIED**, and Plaintiff's Motion for Summary Judgment [178] on Defendant's counterclaim is correspondingly **GRANTED**. Plaintiff's Motion for Summary Judgment on its remaining state law claims is **DENIED**, and Defendant's Motion for Summary Judgment on these claims is correspondingly **GRANTED**. Defendant is entitled to recover $6,975.00 as its reasonable costs and attorney's fees incurred as a result of bringing its Motion to Compel under Federal Rule of Civil Procedure 37. The Clerk is **DIRECTED** to close this case.

**SO ORDERED** this   27th   day of March, 2007.

RICHARD W. STORY
UNITED STATES DISTRICT JUDGE